IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT E. MORRIS, #R-71372, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| vs. | | Case No. 17-CV-857-NJR |
| DR. TROST, R. ENGELAGE, OFC. LEE, SGT. MCGHEE, SGT. LINDENBERG, MS. LASHBROOK, and DIRECTOR BALDWIN, | | |
| Defendants. | | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Robert E. Morris, an inmate currently housed at Menard Correctional Center ("Menard"), filed this action pursuant to 42 U.S.C. § 1983. Plaintiff's allegations can be divided into three sets of claims: (1) Plaintiff's chronic back pain and related medical permit for two mattresses; (2) Plaintiff's placement in segregation in connection with refusing a tuberculosis test in December 2016; and (3) constitutional violations stemming from Plaintiff's suicide attempt. In connection with these claims, Plaintiff seeks monetary damages. (Doc. 1, p. 15).

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify

cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

As a part of screening, the Court is also allowed to sever unrelated claims against different defendants into separate lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In *George*, the Seventh Circuit emphasized that the practice of severance is important, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *Id*. This practice is encouraged. The Seventh Circuit Court of Appeals has recently warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). *See also Wheeler v. Talbot*, No. 15-3325, 2017 WL 2417889 (7th Cir. June 5, 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them).

Consistent with *George*, *Owens*, and *Wheeler*, improperly joined parties and/or claims will be severed into new cases, given new case numbers, and assessed separate filing fees.

## The Complaint

As noted above, Plaintiff's Complaint can be divided into three sets of claims: (1) Plaintiff's chronic back pain and related medical permit for two mattresses; (2) Plaintiff's placement in segregation in connection with refusing a tuberculosis test in December 2016; and (3) constitutional violations stemming from Plaintiff's suicide attempt. Facts relevant to these claims are summarized more fully below.

*Back Pain and Double Mattress Permit*

The Complaint suggests Plaintiff suffers from chronic back pain. (Doc. 1, p. 10). Because of his back pain, Dr. Obasi, the medical director at Stateville Correctional Center, issued a permit that allowed Plaintiff to have two mattresses. (Doc. 1, pp. 10, 17). The permit was issued on March 15, 2016, and it did not expire until March 15, 2017. *Id.*

Plaintiff was transferred to Menard on November 26, 2016. (Doc. 1, p. 10). On December 7, 2016, Plaintiff was seen by Trost, a physician. *Id.* Trost "deliberately" disregarded Plaintiff's prior permit and did not authorize use of two mattresses. *Id.* Plaintiff contends this constitutes "malpractice" and caused him to suffer in pain. *Id.*

On December 5, 2016, Plaintiff filed a grievance pertaining to, among other things, Dr. Trost's decision to deny the double mattress permit. (Doc. 1, pp. 18-19). The grievance was subsequently denied. (Doc. 1, p. 20).

*Tuberculosis Test and Segregation*

On December 31, 2016, Plaintiff was seen by Engelage, an EMT.[1] Engelage attempted to

---

[1] In the caption of the Complaint and list of defendants, Plaintiff identifies R. Engelage as a defendant. (Doc. 1, pp. 1-2). R. Engelage is described as an emergency medical technician (EMT). *Id.* More specifically, Plaintiff

complete a tuberculosis test. *Id.* Plaintiff refused to comply because Engelage wanted to perform the test using the "chuckhole" in Plaintiff's cell. *Id.* Plaintiff contends that conducting a tuberculosis test in this manner (1) is unsanitary – because both Plaintiff and his cellmate receive their food through the chuckhole and thus the chuckhole could contain "micro-miniature blood splatter" and (2) violates prison procedures for medical/forensic examinations. *Id.*

When Plaintiff refused, Engelage issued a disciplinary ticket for failure to submit to medical/forensic testing. (Doc. 1, pp. 10, 23-25). In connection with this disciplinary ticket, Plaintiff spent between four and six days in segregation. (Doc. 1, p. 10 (alleging four days in segregation) and Doc. 1, p. 24 (alleging six days in segregation)). Eventually, Plaintiff was seen by Brookman, the adjustment committee/hearing board chairman. (Doc. 1, p. 10). Thereafter, Plaintiff was released from segregation. *Id.* The disciplinary ticket was subsequently expunged. (Doc. 1, pp. 23-25).

Although it is not entirely clear what type of claim Plaintiff intended to allege with respect to the disciplinary ticket, the Complaint suggests that Plaintiff is alleging issuance of the disciplinary ticket was unjustified. (Doc. 1, p. 10). The Complaint does not address what, if any, procedural protections Plaintiff was afforded in connection with the disciplinary ticket and his time in segregation.

*Claims Stemming from Plaintiff's Suicide Attempt*

On April 12, 2017, Plaintiff attempted to commit suicide in his cell by hanging himself. (Doc. 1, p. 11). Other inmates sought help from correctional officers. *Id.* Lee, a crisis officer, and

---

indicates that R. Engelage "does issues like hypodermic needle testings thr[ough] the inmates['] chuckhole where they eat at. Instead of taking them to sanitary enfironments. Stating: "It's easier for me to do it this way – I don't care about what's sanitary for you, it's sanitary for me and faster." (Doc. 1, p. 2). In his statement of claim, Plaintiff directs claims against "Ms. Reva Engelage…EMT" and "Reva." (Doc. 1, p. 10). Reading the Complaint in its entirety, it is evident that allegations pertaining to "Ms. Reva Engelege" and "Reva" are directed at the EMT Defendant identified as R. Engelage.

McGhee, a sergeant, responded. *Id.* Upon arriving at Plaintiff's cell, McGhee yelled, "Untie yourself dumbass. Don't think we are unaware of that stunt you tried to pull with the hitting your head with the breakfast tray. We know your crazy ass is a suicide risk. Now untie yourself and comply with these orders." *Id.* Plaintiff was incoherent and unable to comply. *Id.* McGhee then sprayed Plaintiff in the eyes, nose, and mouth with pepper spray. *Id.* At that point, Plaintiff lost consciousness. *Id.* McGhee and Lee then entered the cell and untied Plaintiff. *Id.* Lee and McGhee handcuffed Plaintiff and laid him on his stomach. *Id.* While Plaintiff was on his stomach, one of the officers pulled Plaintiff's pants down and inserted an object into Plaintiff's rectum. *Id.* Plaintiff speculates that the object was the bottom of a pepper spray can. *Id.* Plaintiff screamed at the officers to stop. *Id.* Leigh and McGhee then dragged Plaintiff to the healthcare unit ("HCU"). *Id.*[2]

The Complaint suggests that while in the HCU, Plaintiff reported the incident as a sexual assault and filed a grievance under the Prison Rape Elimination Act ("PREA"). (Doc. 1, p. 12).[3] At some point, Plaintiff was transferred to the crisis watch division. *Id.* While in the crisis watch division, Plaintiff was interviewed by Ms. Masterson, an internal affairs officer. *Id.* Plaintiff informed Ms. Masterson that a nurse denied his request for a rape kit in connection with the incident and that a lieutenant breached confidentiality in connection with Plaintiff's PREA grievance. *Id.* According to the Complaint, Plaintiff's PREA grievance was denied due to lack of

---

[2] It appears that Plaintiff received an offender disciplinary report in connection with his suicide attempt. (Doc. 1, p. 32). The report includes a slightly different version of events. The report charged Plaintiff with damage and misuse of property (apparently related to his misuse of a sheet in his suicide attempt) and disobeying a direct order (three orders directing Plaintiff to untie himself). *Id.* The ticket was subsequently dismissed due to Plaintiff's mental health status. (Doc. 1, p. 33).

[3] This portion of the Complaint is disjointed and difficult to discern. Plaintiff does not clearly describe what happened in the HCU. It is evident, however, that Plaintiff wanted to report a sexual assault and/or file a PREA grievance. Plaintiff apparently experienced difficulty doing so. He contends that a nurse, who is not a defendant in this action, denied Plaintiff's request for a rape kit. He also contends that a lieutenant, who is not a defendant in this action, breached confidentiality with respect to Plaintiff's PREA grievance. A grievance attached to the Complaint (Doc. 1, pp. 37-47) provides some additional detail regarding these claims.

proof. *Id.*

Following the suicide attempt, Plaintiff was placed in segregation for approximately five days. (Doc. 1, p. 13). On April 17, 2017, when Plaintiff was released from segregation, two officers—Lindenberg (a sergeant) and Felipo (not a defendant in this action)—"roughly" escorted Plaintiff to a holding cell. *Id.* Two or three additional officers were waiting in the holding cell. When Plaintiff arrived in holding cell, he was attacked. Officers took turns kicking, biting, and beating Plaintiff. *Id.* One officer placed a plastic bag over Plaintiff's head and suffocated Plaintiff for 12-15 seconds. *Id.* According to the Complaint, Lindberg ordered the involved officers to use the plastic bag to suffocate Plaintiff. (Doc. 1, p. 3). Then, Lindberg ordered the officers to remove the bag and continue to beat Plaintiff. *Id.* After the beating was over, the officers brought Plaintiff to his feet and dragged him to a new cell. (Doc. 1, p. 13).

For several days, Plaintiff repeatedly asked officers and nurses for medical treatment. His requests were denied. *Id.* The officers and nurses he spoke to stated, "Stop fucking filing PREA investigations. We don't tolerate all that non-sense." *Id.*

Undeterred by these warnings, Plaintiff pursued his PREA grievance and the grievance process. (Doc. 1, p. 14). Plaintiff contends he wrote letters to Lashbrook and Baldwin regarding the assault on the day he attempted suicide and the subsequent assault when he was released from segregation. *Id.* Plaintiff's grievances were denied and/or the requests in his letters were denied (Plaintiff indicates he asked to be transferred to another facility). *Id.*

## **Designation of Counts**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The

designation of these counts does not constitute an opinion regarding their merit. Any claims not addressed in this Order should be considered dismissed without prejudice from this action.

**Count 1:** Eighth Amendment deliberate indifference claim against Trost for failing to honor the two mattress medical permit issued when Plaintiff was incarcerated at Stateville Correctional Center.

**Count 2:** Eighth Amendment deliberate indifference claim against Engelwood for attempting to perform a tuberculosis test through the "chuckhole" in Plaintiff's cell.

**Count 3:** Procedural and/or substantive due process claim against Engelwood for issuing an unjustified disciplinary ticket, resulting in Plaintiff spending between four and six days in segregation.

**Count 4:** Eighth Amendment deliberate indifference claim against Lee and McGhee for their response when they found Plaintiff hanging from his neck in an apparent suicide attempt.

**Count 5:** Eighth Amendment excessive force claim against Lee and McGhee for spraying Plaintiff with pepper spray when he was hanging from his neck in an apparent suicide attempt and for inserting an object into Plaintiff's rectum, when he was handcuffed on the floor of his cell following the attempted suicide.

**Count 6:** Eighth Amendment excessive force claim against Lindenberg for directing other officers to assault Plaintiff and/or participating in assaulting Plaintiff on April 17, 2017.

**Count 7:** First Amendment retaliation claim against Lindenberg for directing other officers to assault Plaintiff and/or participating in assaulting Plaintiff on April 17, 2017, as retaliation for Plaintiff's PREA grievance.

**Count 8:** Constitutional claim against Lashbrook and Baldwin for denying and/or mishandling Plaintiff's grievances regarding past assaults by prison officials.

The body of the Complaint asserts several claims against known and unknown individuals who are not defendants in this action. The Court may not treat these individuals as defendants in the case. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (defendants must be "specif[ied] in the caption"). Accordingly, allegations against these

individuals have been disregarded, except to the extent that the allegations are relevant to the counts designated above. That being said, Plaintiff has brought three distinct sets of claims, (Count 1, Counts 2 through 3, and Counts 4 through 8) against different defendants who are not properly joined under the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 18 and 20. These claims do not belong together in a single action. The Court will therefore exercise its discretion and sever unrelated claims against different defendants into separate cases. *George,* 507 F.3d at 607.

## Severance

Consistent with the *George* decision and Federal Rule of Civil Procedure 21, the Court shall sever the claim related to Plaintiff's chronic back pain and double mattress permit (Count 1) into a separate action and the claims pertaining to Plaintiff's tuberculosis test (Counts 2 and 3) into another action. These separate actions, for Count 1 and Counts 2 and 3, will have newly assigned case numbers and shall be assessed filing fees. The severed cases shall undergo preliminary review pursuant to § 1915A after the new case numbers and judge assignments have been made.

Counts 4 through 8, which appear, at least tenuously, to be transactionally related, shall remain in this action and shall receive preliminary review below.

## Merits Review Under § 1915(A) – Counts 4 through 8

*Count 4*

The Complaint states a plausible deliberate indifference claim as to Lee and McGhee for their conduct on April 12, 2017, when they found Plaintiff hanging from his neck in an apparent suicide attempt. In order to state such a claim, Plaintiff must allege that he suffered from an objectively serious medical need and that prison officials responded with deliberate indifference

to that need. *Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015). Deliberate indifference is a subjective standard that requires a "sufficiently culpable state of mind," one that amounts to "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Here, Plaintiff was found hanging from his neck in an apparent suicide attempt. Taking Plaintiff's allegations as true, as the Court must do at this stage of the litigation, the Complaint sufficiently indicates that Plaintiff was suffering from an objectively serious medical need. The Complaint also suggests that Lee and McGhee responded to Plaintiff's serious medical need with deliberate indifference. Instead of immediately remove the ligature, Defendants allegedly taunted Plaintiff, suggesting he should cut himself down. Then they sprayed him with pepper spray until he lost consciousness. Only then did Defendants remove the ligature and place Plaintiff on the floor. Once Plaintiff was handcuffed and on the floor, one of the Defendants assaulted him by inserting an object into his rectum. After the assault, Plaintiff was taken to the HCU. These allegations are sufficient to allow Plaintiff to proceed with **Count 4** as to Lee and McGhee.

*Count 5*

The intentional use of excessive force against a prisoner without penological justification runs afoul of the Eighth Amendment's proscription against cruel and unusual punishment. *Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An assault that is carried out "'maliciously and sadistically,' rather than as part of 'a good-faith effort to maintain or restore discipline,'" supports an Eighth Amendment claim. *Wilkins*, 559 U.S. at 40, (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). The Complaint articulates a colorable excessive force claim against Lee and McGhee under this standard.

Plaintiff alleges that while he was hanging from his neck, Defendants sprayed him in the

nose, mouth, and eyes with pepper spray until he lost consciousness. Subsequently, Plaintiff was placed on the floor in handcuffs, apparently incapacitated. At that time, a cold, round object—possibly the bottom of a pepper spray can—was inserted into his rectum. These facts sufficiently support an excessive force claim. Accordingly, **Count 5** shall receive further review against Lee and McGhee.

*Count 6*

According to the Complaint, Plaintiff was beaten by several officers on April 17, 2017, without penological justification. Plaintiff claims officers took turns beating, kicking, and biting him. He also was suffocated with a plastic bag for 12-15 seconds. Lindenberg was present during the assault and allegedly participated in the assault and/or issued the order directing the involved officers to assault Plaintiff. These allegations sufficiently state a claim for excessive force as to Lindenberg. Accordingly, **Count 6** shall receive further review as to this Defendant.

*Count 7*

Prison officials may not retaliate against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). A "prisoner can state a claim for retaliatory treatment by alleging a chronology of events from which retaliation can be inferred." *Jellis v. Hulick*, 422 F. App'x 548, 550 (7th Cir. 2011). However, the Seventh Circuit has rejected the notion that prisoners are *required* to allege a chronology of events at the pleading stage. *See McElroy v. Lopac,* 403 F.3d 855, 858 (7th Cir. 2005) ("we note that the district court required far too much of [the prisoner] in the first place. Our recent cases have rejected any

requirement that an inmate allege a chronology of events in order to state a claim of retaliation because such a requirement is contrary to the federal rule of notice pleading."); *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (prisoner need not allege a chronology of events in order to state a claim for retaliation). In other words, allegations pertaining to a chronology of events from which retaliation can be inferred are sufficient but not required. "Instead, a plaintiff must allege only enough to put the defendants on notice and enable them to respond." *McElroy,* at 858. In this regard, allegations describing the defendant's retaliatory conduct and the constitutionally protected activity that motivated the retaliatory conduct are sufficient. *Id.*

The Complaint suggests that the beating Plaintiff allegedly experienced on April 17, 2017, was retaliation for Plaintiff pursuing a PREA grievance. Plaintiff has alleged that Lindenberg participated in and/or directed officers to assault Plaintiff. At this early stage in the litigation, these allegations are sufficient to put Lindenberg on notice and enable him to respond. Accordingly, **Count 7** shall receive further review as to Lindenberg.

*Count 8*

Plaintiff suggests that Lashbrook and Baldwin are subject to liability for denying and/or mishandling Plaintiff's complaints about the conduct at issue in Counts 4 through 8. Typically, "inaction following receipt of a complaint about someone else's conduct is not a source of liability." *Estate of Miller by Chassie v. Marberry*, 847 F.3d 425, 428-29 (7th Cir. 2017). *See also Aguilar v. Gaston-Camara*, No 15-3894, 2017 WL 2784561, *4 (7th Cir. June 28, 2017) (the Seventh Circuit has "rejected the notion that 'everyone who knows about a prisoner's problems' will incur § 1983 liability.") (citing *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009)). Nonetheless, under certain circumstances, a prison official's knowledge of an ongoing constitutional violation can trigger a duty to investigate and take action to rectify the violation.

*See e.g., Perez v. Fenoglio,* 792 F.3d 768, 781-82 (7th Cir. 2015) ("a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate and, if necessary, to rectify the offending condition.") (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996)).

The allegations in this case do not suggest that Lashbrook and Baldwin are subject to liability under the latter standard. The Complaint suggests that Plaintiff complained to these officials about constitutional violations that occurred in the past and were not ongoing. Thus, there was no reason for these individuals to intervene on Plaintiff's behalf.

Accordingly, **Count 8** shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### Pending Motions

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) shall be referred to United States Magistrate Judge Donald G. Wilkerson for disposition.

### Disposition

*Severance*

**IT IS HEREBY ORDERED** that **COUNT 1** is **SEVERED** into a new case against **TROST**.

**IT IS FURTHER ORDERED** that **COUNTS 2** and **3** are **SEVERED** into a new case against **ENGELAGE**.

**IT IS FURTHER ORDERED** that the *only claims remaining in this action, are* *COUNTS 4, 5, 6, 7, and 8.*

Consistent with the severance of **COUNT 1** and **COUNTS 2** and **3**, the Clerk of the

Court is **DIRECTED** to **TERMINATE TROST** and **ENGELAGE** as parties in *this* action.

*Newly Severed Cases*

The claims in the newly severed cases shall be subject to screening pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment is made. In the new cases, the Clerk is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc. 1); and
- Plaintiff's motion to proceed *in forma pauperis* (Doc. 2).

Plaintiff **will be responsible for an additional $350 filing fee** in each newly severed case.[4] No service shall be ordered in the severed cases until the § 1915A review is completed.

This newly severed case shall be captioned:

**COUNT 1**
- **ROBERT E. MORRIS**, Plaintiff vs. **DR. TROST** (Medical Doctor, Menard CC), Defendant.

**COUNTS 2 and 3**
- **ROBERT E. MORRIS**, Plaintiff vs. **R. ENGELAGE** (EMT, Menard CC), Defendant.

*Merits Review of Counts 4 through 8 (The Only Claims Remaining in This Case)*

**IT IS HEREBY ORDERED** that **COUNT 4** shall receive further review as to **LEE** and **MCGHEE.**

**IT IS FURTHER ORDERED** that **COUNT 5** shall receive further review as to **LEE** and **MCGHEE.**

**IT IS FURTHER ORDERED** that **COUNT 6** shall receive further review as to **LINDENBERG.**

**IT IS FURTHER ORDERED** that **COUNT 7** shall receive further review as to

---

[4] Pursuant to 28 U.S.C. § 1914, effective May 1, 2013, an additional $50.00 administrative fee is also to be assessed in all civil actions, unless pauper status is granted.

**LINDENBERG.**

**IT IS FURTHER ORDERED** that **COUNT 8** is **DISMISSED without prejudice** as to Lashbrook and Baldwin for failure to state a claim upon which relief can be granted. As this is the only count directed at these individuals, they are **DISMISSED** without prejudice from the Complaint and the Clerk of the Court is **DIRECTED** to terminate them as parties in CM/ECF.

This case shall now be captioned: **ROBERT E. MORRIS**, Plaintiff vs. **OFC. LEE** (C/O Menard CC), **SGT. MCGHEE** (Menard CC), and **SGT. LINDENBERG** (Menard CC), Defendants.

With respect to **COUNTS 4, 5, 6,** and **7,** the Clerk of Court shall prepare for **LEE, MCGHEE,** and **LINDENBERG** : (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 4). Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 24, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**