# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT E. MORRIS, <br> # R-71372, <br>                  Plaintiff, <br> vs. <br> REVA ENGELAGE, <br> TRISHA LAWRENCE, <br> MS. WOOD, <br> JOHN DOE, and <br> JOHN/JANE DOE, <br>                  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 17-cv-1167-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

In *Morris v. Lee*, Case No. 17-cv-857-NJR (S.D. Ill. Aug. 14, 2017), Plaintiff Robert Morris, an inmate in Menard Correctional Center, brought suit for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), two claims against Defendant Engelage were severed from that initial action to form the basis for this action, Case No. 17-cv-1167-NJR. On November 28, 2017, this Court dismissed Plaintiff's claims without prejudice for failure to state a claim upon which relief may be granted. (Doc. 6). Plaintiff filed a First Amended Complaint on January 8, 2018. (Doc. 9).

This case is now before the Court for a preliminary review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the

complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

After fully considering the allegations in Plaintiff's First Amended Complaint and any exhibits, the Court concludes that this action is subject to summary dismissal.

## The First Amended Complaint

In his First Amended Complaint (Doc. 9), Plaintiff makes the following allegations: on December 31, 2016, Plaintiff was seen by Defendant Engelage, an Emergency Medical Technician ("EMT"), who was accompanied by Officer John Doe. (Doc. 9, p. 11). Engelage attempted to complete a tuberculosis test. *Id.* Plaintiff pleaded with Officer John Doe and Engelage that the way Engelage wanted to perform the test was illegal, unjust, and unsanitary. *Id.* Officer John Doe, who had no security training, told Plaintiff that he was "allowing her (EMT Reva) to do her own thing," noting that "[s]he's been doing this for years. Can't no inmate tell me anything different." *Id.* Plaintiff then showed Engelage and Officer John Doe the rulebook

2

where it outlines how forensic tests are to be conducted in sanitary and safe conditions. *Id.* Plaintiff refused to comply with the test because Engelage wanted to perform it using the "chuckhole" in Plaintiff's cell. *Id.* Plaintiff contends that conducting a tuberculosis test in this manner is unsanitary because Plaintiff and his cellmate receive their food through the chuckhole, and the chuckhole could contain "micro-miniature blood splatter." *Id.* Upon Plaintiff's refusal, Officer John Doe and Engelage told Plaintiff to pack his things for segregation. *Id.*

Once housed in segregation, Plaintiff was seen by the Adjustment Committee Hearing Board and Lieutenant Brookman. *Id.* The Adjustment Committee Final Summary Report from the incident, which Plaintiff attached as an exhibit to the original Complaint and requested to be attached to his First Amended Complaint, indicates that Engelage issued Plaintiff the disciplinary ticket for "failure to submit to medical/forensic test." (Doc. 2, p. 25). The ticket was dismissed and expunged by committee members Brookman and Hart on January 4, 2017. *Id.* The report indicates that it was served on Plaintiff by Yvette Baker on January 27, 2017. *Id.* Plaintiff claims he was left in segregation wrongfully "because the authorized correctional officials didn't release Plaintiff until he had sat for 6 full days." (Doc. 9, p. 11).

On May 9, 2017, Plaintiff submitted an inmate money voucher to the records office requesting several documents, including Plaintiff's disciplinary ticket from December 31, 2016. (Doc. 9, p. 12). Inside the envelope was a letter to Defendant Trisha Lawrence and the Records Office. *Id.* On this letter, Lawrence indicated that Plaintiff's ticket was "not in file." *Id.* On May 18, 2017, Plaintiff submitted a grievance to Defendant Counselor Wood about his May 9, 2017 request for his December 31, 2016 disciplinary report. (Doc. 9, p. 13). Wood responded to the grievance, noting that the issue was "out of time frame" and that there was no inmate disciplinary report for December 31, 2016. *Id.* Plaintiff believes this to be a cover-up. *Id.*

On September 6, 2017, Plaintiff received a grievance response from Defendant Grievance Officer John/Jane Doe in relation to his letter to the Grievance Office on August 31, 2017, and to the Records Office September 7, 2017. *Id.* John/Jane Doe "toyed around with Plaintiff and his request because [he or she] wanted to void all documents and filings from existing for the mentioned issue of the [December 31, 2016 inmate disciplinary report]." *Id.*

Plaintiff seeks monetary damages. (Doc. 9, p. 14).

## Discussion

Based on the allegations of the First Amended Complaint, the Court finds it convenient to designate new counts in this *pro se* action. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

> **Count 1 –** Eighth Amendment deliberate indifference claim against Engelage and Officer John Doe for attempting to perform a tuberculosis test through the "chuckhole" in Plaintiff's cell and/or supporting such an attempt.
>
> **Count 2 –** Due process claim against Engelage for issuing an unjustified disciplinary ticket, resulting in Plaintiff spending six days in segregation.
>
> **Count 3 –** Claim against Lawrence, Wood, and Grievance Officer Jane/John Doe for failing to provide Plaintiff with his inmate disciplinary report for the December 31, 2016 incident.

As discussed in more detail below, each of the counts will be dismissed for failure to state a claim upon which relief may be granted. Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.

## Count 1 – Deliberate Indifference

Plaintiff has not substantially changed his allegations against Engelage related to the December 31, 2016 incident. As previously noted, a prison official's deliberate indifference to an

inmate's health or safety may violate the Eighth Amendment's ban on cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Once again, whether Plaintiff seeks to hold Engelage and Officer John Doe liable under the Eighth Amendment for being deliberately indifferent to a serious medical need of his, for subjecting him to unconstitutional conditions of confinement based on the state of his chuckhole, or for not following prison procedures for administering medical tests, Plaintiff's allegations regarding the attempted but refused tuberculosis test do not, as pled, give rise to a constitutional claim. Plaintiff does not claim he suffers from a serious medical condition, to the extent he seeks to bring a deliberate indifference to medical needs claim.

Plaintiff also does not state sufficient facts to render plausible the idea that Engelage or Officer John Doe exposed him to a substantial risk of serious harm. Once again, Plaintiff does not claim that inmates have fallen ill as a result of these tests. Plaintiff also refused the test, so he was able to avoid any harm he thinks may have resulted. Further, Plaintiff does not allege what harm he believes he faced from Engelage's actions and instead relies on vague statements that the practice was unsafe and unsanitary. Finally, he fails to provide any facts to show that Engelage or Officer John Doe were aware that a substantial risk of serious harm existed. Without more, this Court will not infer Engelage or Officer John Doe were deliberately indifferent. As noted previously, the failure to follow prison procedures also does not independently give rise to a constitutional claim. For these reasons, Count 1 will be dismissed without prejudice.

## **Count 2 – Disciplinary Ticket**

Plaintiff once again takes issue with a disciplinary ticket Engelage issued him after he refused to submit to a tuberculosis test. Plaintiff also takes issue with the fact that he was in segregation for six days as a result. In *Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir.

1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963 (1974). The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan*, 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

Plaintiff does not claim he was deprived of the procedural protections outlined in *Wolff*. Instead, the First Amended Complaint, like the original Complaint, suggests he was granted a hearing, and his exhibits show that his ticket was ultimately expunged. The Court will not infer that Plaintiff was deprived of due process when the few allegations on the issue tend to show that he received it. Further, Plaintiff's brief stay in segregation as a result of the ticket also fails to support a constitutional claim absent allegations showing that the conditions Plaintiff faced while in segregation were independently unconstitutional. For these reasons, Count 2 will be dismissed without prejudice.

### Count 3 – Disciplinary Report

It is not clear what legal framework Plaintiff seeks to base his claims against Lawrence, Wood, and Grievance Officer John/Jane Doe on for their failure to provide him with his inmate disciplinary report upon request. Plaintiff has suggested that these defendants were attempting to cover something up by denying him the disciplinary report. Although the Seventh Circuit has recognized a Section 1983 claim where a defendant tries to cover-up unlawful conduct, the basis for this type of claim lies in the denial of a plaintiff's right of access to the courts. *Vasquez v.*

*Hernandez*, 60 F.3d 325, 329 (7th Cir. 1995). A cover-up leads to a denial of access to the courts only where the cover-up was to some extent successful. *Id.* (finding a denial of plaintiff's right of access to the courts occurred when a conspiracy to cover-up "prevented a full and open disclosure of facts crucial to the cause of action, rendering hollow the plaintiffs' right of access."); *Gibson v. Chicago*, 910 F.2d 1510, 1523-24 (7th Cir. 1990) (stating that a plaintiff cannot state a claim for denial of access to the courts without alleging some concrete injury resulting from the alleged cover-up).

Plaintiff received a copy of his Adjustment Committee Final Summary Report related to the December 31, 2016 ticket at some point. He included it as an attachment to his original Complaint in this action, which was originally filed August 14, 2017 in Case No. 17-cv-857. In fact, the Adjustment Committee Final Summary Report indicates that Plaintiff was served with it not long after it was issued, on January 27, 2017. Regardless of when Plaintiff received the report, he did receive it, so defendants were unsuccessful in any attempted cover-up, and Plaintiff did not suffer any concrete injury as a result.

To the extent Plaintiff believes he was unconstitutionally deprived of the money he sent to the records office in order to obtain the report, the due process clause of the Fourteenth Amendment provides that the states shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. There is no loss of property without due process of law, however, if a state provides an adequate post-deprivation remedy for the loss. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post deprivation remedy for the loss is available.").

The United States Court of Appeals for the Seventh Circuit has specifically held that an Illinois Department of Corrections ("IDOC") prisoner has an adequate post-deprivation remedy for confiscation of a prisoner's non-contraband property by IDOC personnel in the form of an action for damages in the Illinois Court of Claims. *See Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (citing 705 ILCS 505/8); *Stewart v. McGinnis*, 5 F.3d 1031, 1035–36 (7th Cir. 1993). Therefore, Plaintiff has failed to state a cognizable claim under 42 U.S.C. § 1983 against Lawrence, Wood, and Grievance Officer Jane/John Doe for a violation of his Fourteenth Amendment rights based on his allegedly fruitless payment to the records office for a copy of his report.

Plaintiff has failed to state a cognizable claim against Lawrence, Wood, and Grievance Officer John/Jane Doe based on the allegations in the First Amended Complaint. These defendants, and Count 3, will therefore be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Leave to Amend**

Because each of the claims in Plaintiff's First Amended Complaint shall be dismissed, the Court must consider whether to allow Plaintiff to submit an amended complaint. Under the facts of this case, the Court finds that any amendment would likely be futile. Leave to amend need not be granted when a party has had multiple opportunities to amend but failed to cure a defective claim, *Agnew v. NCAA*, 683 F.3d 328, 347 (7th Cir. 2012), or when further amendment would be futile, *McCree v. Grissom*, 657 F.3d 623, 624 (7th Cir. 2011). "[F]utile repleadings include restating the same facts using different language, *Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1244 (7th Cir. 1983), reasserting claims previously determined, *id.*, failing to state a valid theory of liability, *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir. 1979),

and the inability to survive a motion to dismiss, *Glick v. Koenig*, 766 F.2d 265, 268 (7th Cir. 1985)." *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994).

Though the Court suspects that any amendment would be futile in this case, particularly because Plaintiff made essentially the same allegations against Engelage in the First Amended Complaint as he did in his original Complaint, out of an abundance of caution, it will grant Plaintiff leave to amend *one final time*.

**Disposition**

**IT IS HEREBY ORDERED** that the First Amended Complaint is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNTS 1**, **2** and **3**, and Defendants **ENGELAGE**, **LAWRENCE**, **WOOD**, **JOHN DOE**, and **JOHN/JANE DOE** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file a Second Amended Complaint, stating any facts which may exist to support a cognizable Section 1983 claim, within 28 days of the entry of this order (on or before **April 29, 2018**). Should Plaintiff fail to file his Second Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. FED. R. APP. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2). Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g) because the dismissal herein is for failure to state a claim upon which relief may be granted.

Should Plaintiff decide to file a Second Amended Complaint, it is strongly recommended

9

that he use the forms designed for use in this District for such actions. He should label the form, "Second Amended Complaint," and he should use the case number for *this* action (*i.e.* 17-cv-1167-NJR). The pleading shall present each claim in a separate count, and each count shall specify, *by name*, the defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that defendant. Plaintiff should attempt to include the facts of his case in chronological order, inserting each defendant's name where necessary to identify the actors. Plaintiff should refrain from filing unnecessary exhibits. Plaintiff should *include only claims related* to those at issue herein in his new complaint. Unrelated claims will be severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to a complaint. Thus, the Second Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the Second Amended Complaint. The Second Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A. No service shall be ordered on any defendant until after the Court completes its § 1915A review of the Second Amended Complaint.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file a Second Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

**IT IS SO ORDERED.**

**DATED: April 2, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**